IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **EPHRAIM UGWUONYE** | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil No. PJM 09-658 |
| | * | |
| **OLUWOLE ROTIMI, et al.** | * | |
| | * | |
| Defendants. | * | |

## MEMORANDUM OPINION

*Pro se* Plaintiff Ephraim Ugwuonye has sued Oluwole Rotimi, Omoyele Sowore, Domain by Proxy Inc., and Mobolaji Aluko, alleging defamation, invasion of privacy and negligence. Rotimi, Domain by Proxy, Inc., and Aluko have previously been dismissed from the case.[1] Sowore's Motion to Dismiss [Paper No. 43] is now before the Court, as is Ugwuonye's Motion to Amend the Complaint [Paper No. 47].

Having considered the pleadings, the Court **DENIES** the Motion to Dismiss [Paper No. 43] and **GRANTS** the Motion to Amend the Complaint [Paper No. 47].

**I.**

Ugwuonye is a Nigerian citizen residing in Maryland who is licensed as an attorney in this state. Sowore is a Nigerian citizen residing in New York and is the founder of Saharareporters.com, a website which provides "commentaries, features, [and] news reports from a Nigerian-African perspective."[2] In March of 2009 Saharareporters.com published an article

---

[1] Oluwole Rotimi was dismissed from the suit for lack of service of process on April 6, 2010. Domain by Proxy, Inc. was voluntarily dismissed from the suit on May 21, 2009. Mobolaji Aluko was voluntarily dismissed on July 28, 2009.

[2] Available at http://www.saharareporters.com/index.php?option=com_content&view=article&id=584.

1

entitled "Property Scandal Rocks Nigerian Embassy in Washington D.C.; Former Ambassador Obiozor Fingered." Ugwuonye alleges that this article contained numerous falsehoods with respect to him, specifically, that the article falsely stated that there was fraud in the sale of various properties of the Nigerian Embassy, including two properties located in Maryland and that Ugwuonye was involved. The article, he submits, suggests that various of the property transactions may not have been properly reported and that at least one property was sold at a price far exceeding its actual value.

Ugwuonye alleges that the article falsely stated that he improperly refused to refund unearned fees to the Embassy of Nigeria, withheld and misappropriated the tax refunds of a client, and mischaracterized the circumstances under which he was found to have violated the Rules of Professional Conduct by the Maryland Attorney Grievance Commission. According to Ugwuonye, the various falsehoods published in the article were the result of an ongoing campaign by Rotimi to engage journalists to regularly attack the credibility of the Government of Nigeria, as well as Ugwuonye's law firm. In an affidavit accompanying his Opposition to the Motion to Dismiss, Ugwuonye states that Sowore had several meetings with Rotimi at Rotimi's residence in Potomac, Maryland, at which time Sowore allegedly received documentation from Rotimi that Rotimi had obtained from the Nigerian Embassy.

In his Motion to Dismiss, Sowore argues that the Court lacks personal jurisdiction over him, or in the alternative, that the case should be dismissed or stayed as a strategic lawsuit against public participation ("SLAPP"), pursuant to Maryland's "Anti-SLAPP" Statute. *See* Maryland Courts and Judicial Proceedings Code Ann. § 5-807(d)(1) (2009). Rotimi thereafter filed his Motion to Amend the Complaint.

**II.**

A federal court may exercise personal jurisdiction over a defendant in the manner provided by state law. *See ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 622 (4th Cir.1997); Fed. R. Civ. P. 4(k)(1)(A). Because the Maryland long-arm statute extends personal jurisdiction to the extent permitted by the Due Process Clause, *see ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 710 (4th Cir. 2002), "the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one." *Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132, 135-36 (4th Cir.1996). Accordingly, the proper inquiry is whether the defendant has sufficient "minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). A court may assume power over an out-of-state defendant either by a proper "finding [of] specific jurisdiction based on conduct connected to the suit or by [a proper] finding [of] general jurisdiction." *ALS Scan*, 293 F.3d at 711.

Ugwuonye does not argue that the Court has general jurisdiction over Sowore, so the Court limits its discussion to the issue of personal jurisdiction. When a defendant's contacts with the forum state "are also the basis for the suit, those contacts may establish specific jurisdiction." *Id*. at 712. In determining whether specific jurisdiction exists, courts consider (1) whether the defendant purposefully availed itself of the privileges of conducting activities in the forum state, (2) whether the plaintiff's claim arises out of the defendant's forum-related activities, and (3) "whether the exercise of personal jurisdiction over the defendant would be constitutionally reasonable." *Id*. at 712. The plaintiff has the burden of establishing that personal jurisdiction exists over the out-of-state defendant. *See Young v. FDIC*, 103 F.3d 1180, 1191 (4th Cir. 1997).

In *ALS Scan,* the Fourth Circuit adapted the traditional standard for establishing specific jurisdiction to the Internet context. There, the Fourth Circuit held that "a State may, consistent with due process, exercise judicial power over a person outside of the State when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." *ALS Scan*, 293 F.3d at 714. The fact that a website can be accessed anywhere, including Maryland, does not by itself demonstrate that a publisher was intentionally directing its website content to a Maryland audience. *See Young v. New Haven Advocate*, 315 F.3d 256, 263 (4th Cir. 2002). "Something more than posting and accessibility is needed to "indicate that the [website] purposefully (albeit electronically) directed [their] activity in a substantial way to the forum state." *Id*.

### III.

Sowore argues that the Court lacks specific jurisdiction over him because the electronic activity in this case, the article published on Saharareporters.com, was directed at Nigeria rather than Maryland. He says that the article was a commentary about Nigerian governmental affairs on a website concerned with Nigeria and aimed at Nigerian readers and would be of little interest to Maryland readers. He further states that Sowore did not visit Maryland to research the article and that the brunt of the injury in this case will be felt in Nigeria because Nigeria is the primary source of Ugwuonye's legal practice.

Ugwuonye responds that specific jurisdiction exists as to Sowore because the website article at issue was sufficiently targeted at Maryland and the effect of the story will be felt in Maryland. The article, he says, 1) references allegedly fraudulent real estate transactions involving two properties located in Maryland; 2) relies on public records located in Montgomery

4

County, Maryland; 3) discusses current and former Nigerian officials Oluwole Rotimi and George Obiozor, both of whom reside or resided in Maryland; and 4) refers to disciplinary proceedings brought against Ugwuonye before the Maryland Attorney Grievance Commission. Beyond the *ALS Scan* analysis, which focuses solely on electronic activity directed to the forum state, Ugwuonye submits that specific jurisdiction is appropriate because Sowore traveled to Potomac, Maryland where he met with Rotimi at his residence for the purpose of planning a campaign of disinformation against Ugwuonye and that those meetings culminated in the publication of the article at issue in this case.

The Court agrees that personal jurisdiction exists as to Sowore. The electronic activity at issue in this case, the March 2009 article published on Saharareporters.com, was directed toward the State of Maryland in several respects. It describes allegedly fraudulent real estate transactions which took place in this State, which were allegedly effected by current or former residents of this State. It also references public records maintained by Montgomery County, Maryland as well as an investigation and decision of the Maryland Attorney Grievance Commission.

While it is true that the article is also directed to Nigeria and an audience that has an interest in Nigerian affairs, the fact remains that a single article may be directed toward multiple fora, and that is clearly the case here. Just as the article concerns potential fraud by Nigerian officials related to properties owned by the Nigerian Embassy, it is simultaneously an article about potential fraud by Maryland residents as to Maryland properties. Accordingly, the article constitutes electronic activity, specifically directed into Maryland, which provides the basis for Ugwuonye's defamation and false light claims. *See ALS Scan*, 293 F.3d at 714. The Court may appropriately exercise specific jurisdiction over Sowore.

But the Court's exercise of specific jurisdiction over Sowore is not based solely on the article published on Saharareporters.com. Ugwuonye further alleges (although Sowore disputes this), that Sowore traveled to Maryland on multiple occasions to meet with Oluwole Rotimi at his residence located in Potomac. The purpose of the meetings, says Ugwuonye, was to coordinate a campaign of disinformation against Ugwuonye, which eventually led to the publication of the Saharareporters.com article at issue in the case. In short, Ugwuonye has alleged that his defamation claim arose, at least in part, out of activities which in fact took place in the State of Maryland. *Id*. at 712. The allegation that Sowore attended meetings in Maryland, along with Sowore's publication of the March 2009 article targeted at a Maryland audience, would establish sufficient "minimum contacts with [Maryland] such that the maintenance of [this] suit [would] not offend 'traditional notions of fair play and substantial justice.' " *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). This jurisdictional fact will presumably be confirmed in the course of the proceedings herein.

## IV.

Sowore argues alternatively that the Complaint must be dismissed pursuant to Maryland Courts and Judicial Proceedings Code Ann. 5-807(d)(1) (2009), also known as Maryland's "anti-SLAPP statue." That statute provides in the relevant part:

A lawsuit is a SLAPP suit if it is:

(1) Brought in bad faith against a party who has communicated with a federal, State, or local government body or the public at large to report on, comment on, rule on, challenge, oppose, or in any other way exercise rights under the First Amendment of the U.S. Constitution or Article 10, Article 13, or Article 40 of the Maryland Declaration of Rights regarding any matter within the authority of a government body;

(2) Materially related to the defendant's communication; and

6

> (3) Intended to inhibit the exercise of rights under the First Amendment of the U.S. Constitution or Article 10, Article 13, or Article 40 of the Maryland Declaration of Rights.
>
> (c) A defendant in a SLAPP suit is not civilly liable for communicating with . . . the public at large, if the defendant, without constitutional malice, reports on, comments on, rules on, challenges, opposes, or in any other way exercises rights under the First Amendment of the U.S. Constitution or Article 10, Article 13, or Article 40 of the Maryland Declaration of Rights regarding any matter within the authority of a government body.

Maryland Courts and Judicial Proceedings Code Ann. 5-807 (2009).

Sowore contends that Ugwuony brought this action in bad faith, that its sole purpose is to bully him, and that it should therefore be dismissed pursuant to the anti-SLAPP statute. He states that this is not the first time he has been sued and that this lawsuit may be part of a concerted effort by the Nigerian Embassy to intimidate him. *See e.g. Orhii v. Omoyele*, No. 08-3557, 2009 WL 926993 (S.D. Tex. March 31, 2009). Ugwuonye responds that this suit was not filed in bad faith, but rather because Sowore published an article containing blatant falsehoods which were intended to destroy Ugwuonye's reputation. Neither party cites case law interpreting the Maryland anti-SLAPP statute.

At this stage of the litigation, where discovery has yet to be completed, the Court is not prepared to dismiss the suit based solely on Sowore's mere allegation that the suit is brought in bad faith. Nor is the fact that Sowore may have been sued before sufficient evidence upon which to conclude that the present suit is baseless, much less a part of a concerted effort on the part of the Nigerian Embassy to intimidate him. Given the limited record currently before the Court, dismissal pursuant to the Maryland anti-SLAPP statute is not appropriate at this time.

## V.

Finally, the Court considers Ugwuonye's Motion to Amend the Complaint. A party may amend its pleading once as a matter of course before a responsive pleading is filed. Fed. R. Civ. P. 15(a)(1). A motion to dismiss is not a responsive pleading; if, as here, defendant has not filed a responsive pleading, plaintiff may still amend once as of right. *Dominio Sugar Corp. v. Sugar Workers Local Union 39*2, 10 F.3d 1064, 1068 n.1 (4th Cir. 1993). The amendment will be allowed.

## VI.

For the foregoing reasons, Sowore's Motion to Dismiss [Paper No. 43] is **DENIED** and Ugwuonye's Motion to Amend the Complaint [Paper No. 47] is **GRANTED**.

A separate Order will **ISSUE**.

**July 30, 2010**

                                                   /s/
                            **PETER J. MESSITTE**
                      **UNITED STATES DISTRICT JUDGE**