IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **EPHRAIM UGWUONYE** | * |
| Plaintiff, | * |
| v. | *   Civil No. **PJM 09-658** |
| **OLUWOLE ROTIMI, et al.** | * |
| Defendants. | * |

**MEMORANDUM OPINION**

*Pro se* Plaintiff Ephraim Ugwuonye, an attorney admitted to the bar of this Court, originally filed this defamation and invasion of privacy suit against multiple Defendants based on an article that appeared on a website with the domain name "Saharareporters.com." That website purports to provide "commentaries, features, [and] news reports from a Nigerian-African perspective."[1] For various reasons, all but one Defendant have been dismissed from the case.[2] The sole remaining Defendant, Omoyele Sowore, is the founder of Saharareporters.com. In his Second Amended Complaint, Ugwuonye asserts claims against Sowore based on four Saharareporters.com articles published between 2009 and 2010. Sowore has filed a Motion for Summary Judgment. For the reasons that follow, the Court will **GRANT** Sowore's Motion.

**I.**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

---

[1] Available at http://saharareporters.com/page/about-sahara-reporters. For further background, see the Court's July 30, 2010 Opinion (Dkt. 60), denying Defendant Sowore's Motion to Dismiss.

[2] Oluwole Rotimi was dismissed for lack of service of process. Ugwuonye voluntarily dismissed his claims against Domain by Proxy, Inc. and Mobolaji Aluko.

R. Civ. P. 56(a).  The court must "view the evidence in the light most favorable to ... the nonmovant, and draw all reasonable inferences in his favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.,* 290 F.3d 639, 644–45 (4th Cir. 2002).  The court, however, must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.,* 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt,* 999 F.2d 774, 778–79 (4th Cir. 1993)).  Summary judgment is warranted when a party fails to make a showing sufficient to establish the elements essential to the party's claim and on which the party will bear the burden of proof at trial.[3]  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  If there is not sufficient evidence for a reasonable jury to find for the nonmovant, summary judgment is appropriate.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

---

[3] Ugwuonye failed to respond in timely fashion to Sowore's Requests for Admission.  Those requests asked Ugwuonye to admit, among other things, that each statement he alleged to be defamatory was in fact substantially true and made without malice.  Under the Federal Rules, a failure to timely respond to a request for admission means that the matter is deemed admitted.  Fed. Rule Civ. Proc. 36(a)(3).  Ugwuonye, a lawyer, is certainly expected to be familiar with the Federal Rules.  His nonresponse effectively admits that the challenged statements are substantially true and were made without malice.

Ugwuonye argues in his opposition that he was unable to respond to the requests for admission because he was overseas in Nigeria and unaware of the discovery requests.  But this is Ugwuonye's suit and he has an obligation to keep up with developments in connection with it. *See Robinson v. Wix Filtration Corp. LLC,* 599 F.3d 403, 406-07 (4th Cir. 2010) (affirming grant of summary judgment despite opponent's objection that he never received email notice and therefore could not oppose motion, because it was obligation of attorney to keep up with docket despite computer issues). Moreover, Ugwuonye admits that during the very same period he alleges he was unaware of Sowore's requests, he was able to propound his own discovery requests.  This calls into serious question his alleged inability to respond.

Ugwuonye's failure to timely respond to Sowore's Requests for Admission provides a sufficient basis for the grant of Sowore's motion and the Court hereby adopts that as an independent ground for granting Sowore's motion.  Alternatively and cumulatively, the Court will also proceed to analyze the case on the merits.

In a defamation case, recovery depends on whether plaintiff is a public or private figure. For a private figure to recover, he or she must demonstrate that: (1) the defendant made a defamatory communication, i.e., communicated a statement tending to expose the plaintiff to public scorn, hatred, contempt, or ridicule to a third person who reasonably recognized the statement as being defamatory; (2) the statement was false; (3) the defendant was at fault in communicating the statement; and (4) the plaintiff suffered harm. *See Piscatelli v. Van Smith*, 35 A.3d 1140, 1147 (Md. 2012).

A public figure has a higher bar. In order to succeed on a defamation claim, he or she must demonstrate by clear and convincing evidence that the statements were (1) defamatory, (2) false, and (3) made with "actual malice." *See, e.g., Chesapeake Pub. Corp. v. Williams*, 661 A.2d 1169, 1174 (Md. 1995). Actual malice is established only if the plaintiff can show that the defendant published the statements with actual knowledge of their falsity or with reckless disregard for their truth. *See New York Times Co. v. Sullivan,* 376 U.S. 254, 279-80 (1964), *Shapiro v. Massengill*, 661 A.2d 202, 217 (Md. 1995).

The actual malice standard is intended to give wide berth to reports on public figures and matters of public interest. *See New York Times Co.,* 376 U.S. at 278-79; *Capital-Gazette Newspapers,* 445 A.2d at 1043. In this context, even erroneous statements are protected when honestly made are protected, a policy which fosters frank debate and dialogue.

Further, when the challenged statements are reports on legal proceedings, as some are here, Maryland recognizes a qualified privilege for fair and substantially accurate reports. In the modern view, this protects the statements regardless of the state of mind of the publisher. *See Chesapeake Pub.,* 661 A.2d at 1174-75, *Nanji v. Nat'l Geographic Soc.,* 403 F. Supp. 2d 425, 433-34 (D. Md. 2005).

A plaintiff cannot defeat summary judgment in a defamation case simply by asserting that the publication was false. *See Pratt v. Delta Air Lines,* 675 F. Supp. 991, 996 (D. Md. 1987). The purpose of Rule 56 is not to replace the conclusory statements in a complaint with those in an affidavit. *See Lujan v. National Wildlife Fed.,* 497 U.S. 871, 888 (1990).

Allegations of invasion of privacy/false light claims are analyzed according to the same legal standards as allegations of defamation. *See Piscatelli*, 35 A.3d at 1146-47. Separate analysis of those claims is therefore unnecessary.

## II.

Ugwuonye is a public figure. The Circuit Court for Montgomery County explicitly found him to be such in a related proceeding involving many of the same statements sued upon here.[4] Ugwuonye is, thus, collaterally estopped from arguing otherwise here. *See Guccione v. Hustler Magazine, Inc.*, 632 F. Supp. 313, 317 (S.D.N.Y. 1986), *rev'd on other grounds,* 800 F.2d 298 (2d Cir. 1986) (plaintiff found to be public figure in earlier libel suit was collaterally estopped from claiming otherwise in case at hand).[5] Indeed, Ugwuonye himself acknowledges that he has achieved fame and notoriety in the community, claiming, among other things, that he has been "listed among the top experts on corporate law, finance and government" at the Harvard Institute for International Development (*see* Second Amended Complaint (Dkt. 70) ¶ 15), and that he has maintained power and influence on the basis of his education and high-profile positions,

---

[4] *See Ugwuonye v. Aluko*, *et al.,* No. 314155V. Mobolaji Aluko, originally a defendant in the present action, was voluntarily dismissed in July 2009, but Ugwuonye then filed the state court action against him.

[5] Under Maryland law, collateral estoppel applies when, as here: (1) the issue sought to be precluded is identical to the one litigated; (2) the issue was actually determined; (3) determination of the issue was a critical and necessary part of the decision in the prior proceeding; (4) the proceeding was final and valid; and (5) the party against whom estoppel is asserted had a full and fair opportunity to litigate the issue. *See Campbell v. Lake Hallowell Homeowners Ass'n,* 852 A.2d 1029, 1037–38 (Md. 2004).

including serving as counsel to the World Bank and to the Government of Nigeria in several high profile cases. He avers that he is an attorney who has competed "at the highest echelon of the legal profession worldwide" (*id.* ¶ 17). His testimony about speaking to hundreds or thousands of people about this case demonstrates that he has ample access to channels of communication. These facts all point unequivocally to Ugwuonye's fame, notoriety, and stature within the community. *See Curtis Publishing Co. v. Butts,* 388 U.S. 130, 155 (1967). The allegedly defamatory statements in this case (including regarding high-level embassy transactions and dealings between the U.S. and Nigerian Governments), as noted by the Circuit Court for Montgomery County, are quintessentially of public concern. *See Ugwuonye v. Aluko, et al.,* No. 314155V, July 23, 2010 Hearing Transcript, pp. 64-65.

As a public figure, then, Ugwuonye must demonstrate by clear and convincing evidence that Sowore made the challenged statements with actual malice—that is, with actual knowledge of their falsity or with reckless disregard for their truth. *See Masson v The New Yorker Magazine*, 501 U.S. 496, 510 (1991) (quoting *New York Times*, 376 U.S. at 279-80). Demonstrating actual malice poses a heavy burden. Courts have held that it

> "cannot be established merely by showing that: the publication was erroneous, derogatory or untrue; the publisher acted out of ill will, hatred or a desire to injure the official; the publisher acted negligently; the publisher acted in reliance on the unverified statement of a third party without personal knowledge of the subject matter of the defamatory statement; or the publisher acted without undertaking the investigation that would have been made by a reasonably prudent person."

*Capital-Gazette Newspapers, Inc. v. Stack*, 445 A.2d 1038, 1044 (1982) (citations omitted). Applying this standard to the facts of the case, viewed in the light most favorable to Ugwuonye, the Court finds that no trier of fact could reasonably conclude by clear and convincing evidence that any of the statements in issue in this case were made with actual malice.

The Court considers each of the statements.[6]

**III.**

The first three statements appeared in a March 5, 2009 Saharareporters.com article. The article, headlined "Property scandal rocks Nigerian Embassy in Washington DC; former Ambassador Obiozor fingered," reports on a variety of real estate transactions in the Washington, DC area involving the Nigerian Embassy, and questions the reported values of a number of real estate sales. The article notes that Ugwuonye provided legal assistance to the Embassy in connection with these transactions. The article further states that Ugwuonye withheld the Embassy's $1.5 million IRS tax refund due from the sales, allegedly because the Nigerian government owed him legal fees for representing Nigerian officials in unrelated litigation. The article also reports that Ugwuonye has previously faced attorney disciplinary proceedings.

It is undisputed that, when writing the article, Sowore investigated public records, researched cases involving Ugwuonye, and spoke to Ugwuonye by telephone at least once. Sowore affirms that he and Ugwuonye discussed the Embassy transactions and that he asked Ugwuonye why he had withheld the refund, to which Ugwuonye responded that he withheld it as a fee to compensate him for previous litigation work for the Embassy and that he and the Nigerian Government were in the midst of negotiating with respect to the fee. Ugwuonye acknowledges that he discussed the Embassy transactions with Sowore, but claims he did not get to explain his side of the story; he says he simply told Sowore there was no fraud. However,

---

[6] The Court confines its consideration to statements pled in the Second Amended Complaint. In his opposition to Sowore's Motion for Summary Judgment, Ugwuonye appears to allege that additional statements are defamatory. While the Court declines to analyze these new statements, a brief review of same suggests that none appear to be defamatory. In any event, Ugwuonye has in no way suggested why these late-remembered statements were not set forth in the Second Amended Complaint.

even if Ugwuonye disputes that he *told* Sowore he was withholding the tax refund as payment for previous legal work, it is undisputed that this is what Ugwuonye actually *did*. He withheld the refund. Ugwuonye says as much in the papers he has submitted to the Court, suggesting that the Nigerian Government initially agreed that he could settle its outstanding legal bills by holding a tax refund due to the Embassy; that he thought he could disburse the refund after being paid by other sources (and therefore, as he testified in his deposition, that he promised the Embassy he would disburse the refund); that he later realized he could not disburse the refund; and that he then took steps to apply the refund to the unpaid legal bills. Ugwuonye further admits that a dispute then arose with the Embassy regarding the application of the tax refund to his fees, and states that this dispute was part of a larger intra-Embassy quarrel that was resolved when the new Nigerian Ambassador (Oluwole Rotimi) was fired by his supervising Minister. Per Ugwuonye, it was in connection with that very dispute that a DC Bar Complaint was filed against him, one—to be sure—which was ultimately dismissed.

Against this background, the specific statements Ugwuonye alleges to be defamatory are these:

(1) "[Plaintiff] said he apprised [then Ambassador] Obiozor over his seizure of the embassy's tax refund, fueling speculation that Obiozor tacitly approved the seizure for pecuniary reasons as he did not try to retrieve the money from [Plaintiff] before he left the U.S."

Given the facts just reviewed, this statement can hardly be considered defamatory. Quite simply, it involves facts that Ugwuonye does not dispute—that he withheld over a million dollars of the Nigerian Embassy's tax refund with the Nigerian Embassy's knowledge. The statement could not have been made with actual malice.

7

    (2) "But [Plaintiff's] seizure of the embassy funds points to a track record of some professional troubles relating to his competence and manner of handling client monies."

This statement involves the same undisputed facts, namely Ugwuonye's withholding of the Embassy's tax refund. In addition, it contains privileged reporting regarding Ugwuonye's past professional misconduct proceedings. Unquestionably a disciplinary matter came before the Maryland Court of Appeals, which considered potential misconduct involving two of Ugwuonye's matters, and which found that Ugwuonye had in fact violated various provisions of the code of professional conduct, including provisions regarding competence, fees and safekeeping of property. Sowore's reporting as to Ugwuonye's professional troubles relating to "competence and handling client monies" was therefore substantially accurate. Even if it were not, Ugwuonye has failed to proffer any evidence that this statement—or any part of it—was made with actual malice.

    (3) "Details of the cases point to [Plaintiff's] professional shadiness."

The third statement amounts to a non-actionable opinion as well as privileged reporting on Ugwuonye's past professional misconduct hearings. Again, most importantly, Ugwuonye has failed to offer evidence that Sowore made this statement with anything approaching actual malice.

## IV.

Challenged statements 4 through 10 appeared in the Sahareporters.com article, entitled "Ugwuonye loses lawsuit to summary judgment," which was published on July 23, 2010. The article discusses the Nigerian Embassy real estate transactions and Ugwuonye's seizure of the tax refund. It also speaks of Ugwuonye's and the Nigerian Government's "habit" of using libel lawsuits to suppress public debate. The article focuses on Ugwuonye's state court case against

Mobolaji Aluko, in which the state judge granted Aluko's motion for summary judgment. The specific challenged statements made by Sowore are these:

> (4) "Falsely stated that Plaintiff made a habit of using libel lawsuits to suppress public debate about the controversial sale of properties belonging to the Nigerian embassy in Washington DC and Maryland."

By the time this article was published, Ugwuonye had indeed brought multiple lawsuits based on the March 2009 piece questioning the circumstances of the sale of Nigerian Embassy properties. Sowore was well aware of these lawsuits, having been the subject of one himself. Again, there is not the least evidence from which to find that this statement was made with actual malice.

> (5) "Falsely stated or clearly insinuated or implied that Plaintiff withheld the funds of his clients to which he is not entitled or unlawfully."

Ugwuonye does not oppose Sowore's motion for summary judgment as to this statement. But regardless—Ugwuonye has admitted to holding a tax refund owing to the Nigerian Embassy, has admitted to telling the Embassy he would deliver the refund, and has admitted to not delivering the refund. Consequently, the statement could not have been made with actual malice.

> (6) "Falsely stated or implied that this court had sanctioned Plaintiff for filing a frivolous lawsuit."

Ugwuonye offers no opposition to summary judgment as to this statement. Even so, the Court finds that the statement is substantially true and could not have been made with malice. In addition, it was a privileged report on a legal proceeding. Ugwuonye initially included Aluko as a defendant in the present case. The Court allowed Ugwuonye to voluntarily dismiss Aluko based on lack of personal jurisdiction. However, the Court also ordered Ugwuonye to pay

9

Aluko's attorneys fees, given that Ugwuonye had filed the suit alleging diversity of citizenship jurisdiction even though both Ugwuonye and Aluko were Maryland residents. (*See* July 28, 2009 Memorandum, Dkt. 45.) A reasonable reading of the Court's order clearly indicates that it was in the nature of a sanction because Ugwuonye, a licensed attorney, had filed a lawsuit that he knew or should have known this Court had no jurisdiction to hear. The fact that Sowore may have characterized Ugwuonye's suit as "frivolous" was without a doubt fair comment. But even if his report of the import of the Court's order was not entirely accurate, it is clear that minor technical inaccuracies may occur in the course of reporting on legal proceedings without giving rise to liability. *See, e.g., Nanji,* 403 F. Supp. 2d at 432-33.

> (7) "Referring to a related case in the State court (*Ugwuonye v. Aluko, et al.*, Circuit Court of Maryland for Montgomery County, Case No. 314155-V), Defendant falsely stated that the state court found that the allegation of fraud made against Plaintiff was true."

Ugwuonye does not attempt to pursue this allegation in his Opposition and for good reason. The Court does not find this statement or anything resembling it in the July 23 article.

> (8) "Referring to a real estate transaction, in which Plaintiff represented the Nigerian Government in Maryland, Defendant Sowore mischaracterized the power of attorney granted to Plaintiff by his client, and falsely alleged that the reason Plaintiff obtained such power of attorney was to enable him to control the funds belonging to the Nigerian government to Plaintiff's advantage, and that armed with the power of attorney, Plaintiff improperly took control of the funds of his client."

Ugwuonye has also proffered no opposition to Sowore's motion regarding this allegation. The facts regarding the Embassy transaction, as discussed above, are that Ugwuonye retained his client's funds and did not return them despite a promise to do otherwise. No reasonable jury

could find that Sowore made this statement with actual knowledge of its falsity or a reckless disregard for the truth.

>   (9) "Referring to this lawsuit, Defendant falsely stated and/or implied that the Government of Nigeria had given funds to the Plaintiff and had a pact with the Plaintiff aimed at filing this suit for the purpose of suppressing or repressing the freedoms of Nigerian citizens."

In his opposition, Ugwuonye argues that language such as this "betrays the tension that has existed" between Sowore and Ugwuonye over the years. This statement is of dubious relevance. Even if there truly was tension between the two, it would not satisfy the requirement of actual malice. Actual malice cannot be established by demonstrating that "the publisher acted of ill will, hatred, or a desire to injure." *See Capital-Gazette Newspapers,* 445 A.2d at 1044. Actual malice requires clear and convincing evidence that Sowore published his statements with knowledge of their falsity or with reckless disregard for their truth. On the evidence before the Court, Ugwuonye has made no such demonstration. Sowore has reported on the activities of the Nigerian Government for some time, and has been sued more than once on the basis of such reporting. Sowore contends that an individual who brought one of these suits against him is now working in a high-level Nigerian Government position. Ugwuonye does not dispute that he was counsel for high-level Nigerian Government transactions, and has further stated that the disagreement over the tax refund was tied to a larger Embassy dispute that was only resolved with the firing of an Ambassador, suggesting that Ugwuonye may well have been supported in his litigation by someone within the Nigerian Government. Sowore could fairly opine that the Nigerian Government was and is behind this suit and others. No reasonable trier of fact could find that he made this statement with actual malice.

(10) "Many who read the publication understood the memorandum as the judgment of the state court against Plaintiff."

Ugwuonye's Second Amended Complaint mischaracterizes the July 23 article, which by no construction reads as if it is the judgment of the Circuit Court of Maryland against Ugwuonye. In any case, Ugwuonye does not attempt to oppose Sowore's motion for summary judgment regarding this point, so nothing more need be said about it.

V.

Statements 11 through 13 appeared in an August 2, 2010 Sahareporters.com article. The article, which covered much the same ground as previous articles, focuses on Ugwuonye's companies, calling them "forfeited," stating that they were revived at the same time Ugwuonye was working for the Nigerian Embassy, and reporting that a source at the Maryland State Comptroller referred to Ugwuonye as a "deadbeat resident agent."

Sowore has testified that he wrote this article based on evidence produced in the state court case and on further research that that evidence generated. Sowore says he initially learned that Ugwuonye had two companies, ECU Law and ECU Associates, P.C., which, according to public records Sowore investigated, had their corporate charters forfeited more than once for failure to pay taxes. Sowore also determined that the records showed that the dates of reinstatement of the companies coincided with the times Ugwuonye was engaged by the Nigerian Embassy to carry out the real estate transactions mentioned in the March 5, 2009 article. Sowore says he contacted the Maryland State Comptroller to seek additional information regarding Ugwuonye's companies, and it was then he was told by an individual there that Ugwuonye was a "deadbeat resident agent," obviously referring to the multiple forfeitures of his corporate charters. In his opposition, Ugwuonye does not actually dispute any of these facts; he

12

merely argues that Sowore had control over the article and that it defames him. The specific statements Ugwuonye deems defamatory are as follows:

    (11)    "Falsely stated or implied that Plaintiff obtained a power of attorney from his client for the purpose of improperly withholding his client's funds."

Based on the same rationale discussed in respect to Statements 5 and 8, no reasonable trier of fact could find that this statement was made with actual malice.

    (12)    "Falsely stated and implied that Plaintiff revived the charter of his company in a deceptive and improper manner for the purpose of Nigerian Government's real estate transaction."

Ugwuonye mischaracterizes the article. The article states that Ugwuonye revived his companies in time to do work for the Nigerian Embassy (which Ugwuonye does not dispute). The article does not contain any statement or even any implication that Ugwuonye revived the charter of his companies in a deceptive or improper manner. The actual statements, taken in context, quite simply, do not have a defamatory meaning and appear substantially true.

    (13)    "Falsely stated and implied that an official at the office of the State Comptroller in Maryland made disparaging remarks against the person of Plaintiff and his business practices."

Sowore offers sworn testimony that statement 13 is an accurate report of his exchange with a Maryland State Comptroller employee, who told him that Ugwuonye was a "deadbeat resident agent" because his corporate charters had been repeatedly forfeited based on failure to pay taxes. Ugwuonye does not dispute that he failed to pay taxes for his companies or that his corporate charters had been forfeited. While he may feel that his characterization as a "deadbeat" is harsh, a dictionary definition of the term, namely, "a person who does not pay debts or financial obligations" (*see Black's Law Dictionary* (9th ed. 2009)), does not unfairly

characterize Ugwuonye's situation with respect to the corporate charters. This statement could not have been made with actual malice.

## VI.

Statement 14, which refers to an August 3, 2010 Saharareporters.com article bearing the byline of Ugwuonye's sister, Ifesinachi Ugwuonye,[7] is as follows:

(14) "[F]alsely stating and implying that Plaintiff is a thief and an adulterer and a person that Plaintiff [sic] engages in acts that involve moral turpitude."

Sowore has testified that the article was widely circulated in Nigerian online forums before he published it. Ugwuonye asserts in his opposition that Sowore received this article from Aluko and published it without doing any investigation. Ugwuonye also asserts that Sowore initially attempted to get an individual named Carlisle Umunnah to publish the article on his website, but that Umunnah declined because it was a "false story" and specifically told Sowore not to publish it.[8]

The article in question was written by Ugwuonye's sister, who has testified she believes the information in the article is true. Sowore, when he published the report, also believed it was true, and had little cause to believe otherwise. The statement, after all, came from Ugwuonye's sister.

Thus, even if Sowore knew that Ugwuonye and Ifesinachi were on bad terms, the fact that the sister of a public figure was making such extreme allegations against her brother—a public figure after all—would be newsworthy in and of itself. *See Campbell v. Seabury Press,* 614 F.2d 395 (5th Cir. 1980) (private life of public figure who was married to author's brother

---

[7] The Court, in order to avoid confusion and intending no disrespect, will refer to Ifesinachi Ugwuonye by her first name.
[8] What Umunnah may have said to Sowore and when he said it is hardly relevant to whether or not the publication was defamatory. Similarly, whether Aluko was the source of the article has no relevance to that question.

14

was legitimately within public interest); *Berg v. Minneapolis Star & Tribune Co.,* 79 F. Supp. 957 (D. Minn. 1948) (family members litigating against each other newsworthy).  So right or wrong, publication of the statement could not have been made with reckless disregard of the fact that it was a sister making the allegations.  Beyond that, from a policy standpoint it would seem distinctly inappropriate and unfair to sustain a defamation claim against a third-party for publishing an article written by the complainant's own sister, particularly when the complainant has not sued the sister.  The possibility for collusion and extortion by the family—any family—against a third party would be unacceptable.

## VII.

For the reasons discussed above, this Court **GRANTS** Sowore's Motion for Summary Judgment as to all counts.  A separate Order will **ISSUE.**

                                                    /s/

**November 20, 2012**              **PETER J. MESSITTE**
                                    **UNITED STATES DISTRICT JUDGE**